# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs November 1, 2011

## STATE OF TENNESSEE v. DEMARIO RAWLINGS

**Direct Appeal from the Criminal Court for Shelby County**
No. 10-04447     John T. Fowlkes, Jr., Judge

No. W2011-01426-CCA-R3-CD  - Filed February 10, 2012

The defendant, Demario Rawlings, was convicted by a Shelby County Criminal Court jury of driving under the influence, a Class A misdemeanor, and was sentenced to eleven months and twenty-nine days in the county jail with all but five days suspended.  On appeal, he challenges the sufficiency of the convicting evidence.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Carlyn L. Addison and R. Trent Hall (at trial), Assistant Public Defenders, for the appellant, Demario Rawlings.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Susan L. Taylor and Billy Bond, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on charges of driving under the influence ("DUI"), reckless driving, and violation of the implied consent law[1] after a police officer observed

---

[1] It appears that the charge of violation of the implied consent law was dismissed prior to trial as the
(continued...)

him driving in downtown Memphis during the early morning hours of September 26, 2009 and initiated a traffic stop of his vehicle.

## State's Proof

At trial, Sergeant Sharon Birk with the Memphis Police Department testified that she was assigned to the DUI unit from January 2007 to July 2010 for which she received specialized training to detect impaired drivers. Sergeant Birk came into contact with the defendant on September 26, 2009 around 5:30 a.m. when she was driving northbound on Front Street and saw the defendant's vehicle "make a wide right turn, disregarding the red-light from Monroe [Avenue], on to northbound, Front Street." Sergeant Birk followed the defendant's car to the next red light at which it stopped "in the pedestrian crosswalk." When the light turned green, the defendant's car "proceeded forward, [but] he straddled lanes. He moved over and he was . . . occupying both the northbound lanes."

Sergeant Birk testified that she initiated a traffic stop and recalled that the defendant's car "stopped, pretty much, right away, but it was really close to the curb when he stopped. So he was almost on the curb when he stopped." She approached the car and saw that the defendant was the driver and that there was another man in the car. Sergeant Birk noted that the defendant was smoking and "had an odor of alcohol about him." She asked the defendant for his driver's license and insurance, and he provided the same.

Sergeant Birk testified that the defendant's speech seemed slurred, so she asked him to step out of the car. She asked the defendant if he had been drinking, and "[h]e said he had and then he kind of . . . said something else that [she] really couldn't understand[.]" She asked the defendant to step out of the vehicle and observed that he was slow in opening the door and stumbled as he exited the car. The defendant walked toward Sergeant Birk, and she walked him back toward his car. As he walked toward his car, the defendant "started kind of swaying and stumbling a little bit towards the street [so Sergeant Birk] had to catch him and guide him back to where [she] wanted him to go." The defendant's pants were unzipped, and he was wearing socks but no shoes. She did not recall the defendant ever asking to put his shoes on, and she did not recall seeing any shoes when she looked into the vehicle.

Sergeant Birk testified that, inside the defendant's car, there was a red plastic cup in the console that appeared to have beer in it. She noted that the liquid smelled like beer and had a foam top. The passenger in the vehicle also had an odor of alcohol about him, and

---

[1](...continued)
jury instructions do not reflect that the charge was submitted to the jury.

Sergeant Birk determined that he had been drinking. She ultimately allowed the passenger to leave the scene on foot.

Sergeant Birk testified that she took the defendant across the street to perform the field sobriety tests because the sidewalk on that side of the street offered a wider and smoother surface. She had the defendant perform the horizontal gaze nystagmus test, the Romberg balance test, the walk and turn test, the one-leg stand test, and the finger to nose test. With each test, Sergeant Birk looked for "clues" of impairment. She explained that "the more clues they get, the higher the indication is of impairment."

Sergeant Birk testified that she recorded her observations on a document called "the field sobriety and implied consent advisory." On that document, Sergeant Birk noted that the defendant had a moderate odor of alcohol, his eyes were watery, his speech was "slurred and thick tongued," and he swayed when he walked. She also noted that his clothing was "disarranged." She further noted that the defendant was polite and cooperative.

Sergeant Birk testified that, with regard to the walk and turn test, the defendant did not lose his balance during the instructions or start too soon, but he stood with one foot at an angle instead of heel to toe as directed. She explained that standing with one foot at an angle made it easier for the defendant to keep his balance. Also, during the test, the defendant "stopped when he made the turn. He didn't touch heel to toe. He was off line and he lost his balance and turned incorrectly. And he also took an incorrect number of steps." Sergeant Birk later observed, when watching the video recording of the tests, that the defendant also used his arms to balance. In sum, Sergeant Birk noted six out of eight clues of impairment during the defendant's performance of the walk and turn test.

Sergeant Birk testified that, with regard to the one-leg stand test, the defendant swayed while attempting to balance, used his arms for balance, and "put his foot down two times on the left foot and five times on the right." During the defendant's performance of the Romberg balance test, the defendant "estimated thirty seconds and somewhere between seventeen and twenty seconds and he also had to be told to close his eyes during the test." In performing the finger to nose test, the defendant missed the tip of his nose five out of six times, and she had to tell him to put his arms down each time. The defendant also opened his eyes after every time he put his arms down. Sergeant Birk stated that it was the combination of all the defendant's errors on the field sobriety tests that convinced her that he was impaired.

Sergeant Birk testified that she read the implied consent advisory to the defendant, and he refused to submit to a breath or blood test. She placed the defendant under arrest based on her conclusion that the defendant was impaired. Sergeant Birk testified that she

made a video recording of the events leading up to the defendant's arrest, and it was admitted as an exhibit and played for the jury. In reviewing the recording, Sergeant Birk also noted that, when sitting in the back of her patrol car, the defendant kept closing his eyes like he was "kind of drifting off to sleep."

On cross-examination, Sergeant Birk acknowledged that she did not have the contents of the red plastic cup in the defendant's car tested. She also acknowledged that, when she initiated the stop of the defendant's car, the defendant did not attempt to evade her and properly signaled to get over. She further acknowledged that the defendant did not hit the curb, although he came close to hitting it. Sergeant Birk admitted that, in the DUI field sobriety report that she filled out, she left the section "effects of alcohol or drugs" unmarked but said she did not know why she did not mark anything.

## Defendant's Proof

The defendant testified that he was stopped around 3:30 or 3:45 a.m. on the day in question. He denied running a red light, claiming that the light "was actually turning yellow when [he] went through it and . . . tried to make the light before it changed to red." The defendant said that he had worked as a school bus driver for ten years at the time of the offense but had lost his job as a result of the current charge.

The defendant testified that he was downtown that morning because his friend, Jermaine Cooper, had called him at his home in Bartlett asking the defendant to pick him up from Beale Street. The defendant denied making any driving errors on the morning in question and pointed out that there were no pedestrians in the crosswalk when his car entered it as shown on Sergeant Birk's video. The defendant also denied being impaired that morning and said that he did not recall stumbling when he got out of his vehicle.

The defendant stated that his shoes were in the backseat of his car, as he had taken them off because they were new and hurting his feet. He said that he twice asked Sergeant Birk if he could get his shoes, both before and during his performance of the field sobriety tests, but she told him to finish the tests first. He said that he had to roll up his pant legs and brush gravel from the bottom of his feet. The defendant stated that he understood the instructions he received for the field sobriety tests and also understood the significance of the blood alcohol test. However, when asked whether he understood Sergeant Birk's explanation of the implied consent law, the defendant responded, "Kind of, sort of." The defendant said that the red plastic cup in his car belonged to Jermaine Cooper and contained Sprite with ice.

-4-

**Rebuttal Proof**

Sergeant Birk testified that she did not recall the defendant asking for permission to put on his shoes before he performed the field sobriety tests. She reiterated that the liquid in the red cup appeared to be beer because it was "yellow-brownish" in color with foam on the top.

Based upon the evidence, as set out, the jury convicted the defendant of DUI.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the evidence was sufficient to sustain his conviction for DUI. He admits that he cannot argue that there is no evidence to support his conviction; he simply asserts that the proof of his intoxication was not sufficient beyond a reasonable doubt. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of

innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The DUI statute provides in pertinent part that "[i]t is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle . . . while . . . [u]nder the influence of any intoxicant, . . . or drug producing stimulating effects on the central nervous system[.]"  Tenn. Code Ann. § 55-10-401(a)(1).

In the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that the defendant drove under the influence.  The proof at trial shows that the defendant was pulled over after he disregarded a red light in making a wide right turn, stopped in the pedestrian crosswalk at another red light, and drove in both lanes of traffic after proceeding through the traffic signal.  After pulling over the defendant, Sergeant Birk, an officer with eighteen years of experience, noticed an odor of alcohol about the defendant and saw a cup of what appeared to be beer inside the defendant's car.  Sergeant Birk recalled that the defendant told her that he had been drinking. Sergeant Birk observed that the defendant had slurred speech, watery eyes, and a disheveled appearance.  She also observed that the defendant stumbled and swayed and performed poorly on several field sobriety tests. Based on the combination of these observations, Sergeant Birk formed the opinion that the defendant was intoxicated.  It was the jury's prerogative to accredit Sergeant Birk's testimony over that of the defendant.  We conclude that there was sufficient evidence from which the jury could determine that the defendant drove under the influence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE